UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBIN A. BERGERON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-09106** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "J" (4)** |

## REPORT AND RECOMMENDATION

This is an action brought pursuant to **Title 42 U.S.C. § 405(g)** for judicial review of a final decision of the Commissioner of Social Security Administration ("SSA"), denying Robin A. Bergeron's ("Bergeron") claim for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

**I.     Factual Summary and Procedural History**

Bergeron was a 48-year old female with three years of college education and who worked as an account representative and office manager. R. Doc. 12-6, Tr. 207-209. She has been diagnosed with neuropathy, a hip condition, brain swelling, arthritis, depression, a dislodged elbow, and back trouble. *Id.* Bergeron claims that her disability began on June 10, 2005. R. Doc. 12-5, Tr. 177, 184. Bergeron filed an application for Supplemental Security Income Benefits on July 7, 2014 (R. Doc. 12-5, Tr. 177-182), which was denied on October 10, 2014. R. Doc. 12-3, Tr. 73-79. She filed an application for Disability Insurance Benefits on January 22, 2015. R. Doc. 12-5, Tr. 183-187.

Bergeron requested a hearing before the administrative law judge, which took place on September 30, 2015. R. Doc. 12-2, Tr. 52-72. A supplemental hearing took place on March 25, 2016. *Id.*, Tr. 34-51. The ALJ found that Bergeron had not been engaged in substantial gainful

activity since the onset date and that she met the insured status requirements of the Social Security Act through December 31, 2011. R. Doc. 12-2, Tr. 13. Bergeron, according to the ALJ, has degenerative disc disease, osteoarthritis, migraine headaches, multiple sclerosis, and neuritis. *Id.* The ALJ found that since the alleged onset date of June 10, 2005, Bergeron does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. Doc. 11-2, Tr. 14.

The ALJ held that since June 10, 2005, Bergeron had the residual functional capacity to perform sedentary work, but with the following non-exertional limitations: no reaching above shoulder level bilaterally; avoiding all exposure to hazards, such as moving machinery and unprotected heights; and no jobs requiring her to read fine print. *Id.* The ALJ further held that since June 10, 2005, Bergeron has not been able to perform any past relevant work. R. Doc. 12-2, Tr. 16.

The ALJ also held that before the established disability onset day, Bergeron was a younger individual aged 45-49. *Id.*, Tr. 17. On April 26, 2016, her age category changed to an individual closely approaching advanced age. *Id.* The ALJ found that Bergeron has at least a high school education and is able to communicate in English. *Id.* The ALJ also noted that before April 26, 2016, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Bergeron is not disabled, whether or not she had transferable job skills. *Id.* The ALJ also noted that on April 26, 2016, Bergeron was not able to transfer her job skills to other occupations. *Id.*

The ALJ further held that prior to April 26, 2016, the date that the claimant's age category changed, considering her age, education, work experience, and residual functional capacity, there

2

were jobs that existed in significant numbers in the national economy that the claimant could have performed. *Id.* The ALJ noted that, according to the vocational expert, Bergeron could have worked as: (1) a surveillance system monitor, which had 15,593 jobs in the national economy and 187 jobs in the local region; (2) a hand packer, a sedentary, unskilled job with about 20,949 jobs in the national economy and 120 jobs in the local region; or (3) a sorter with about 11,890 jobs in the national economy and 162 jobs in the local region. *Id.*, Tr. 18.

The ALJ held that beginning on April 26, 2016, considering Bergeron's age change, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the she could perform. *Id.* The ALJ held that while Bergeron was not disabled before April 26, 2016, she became disabled on that date and continued to be disabled through the date of his decision. *Id.*, Tr. 19. Lastly, the ALJ held that Bergeron was not under a disability within the meaning of the Social Security Act at any time through December 31, 2011, the last date she was insured. *Id.*

On September 15, 2017, Bergeron filed a complaint in this court contending that the ALJ's decision is not based upon substantial evidence. R. Doc. 1. Bergeron contends that the opinion lacks substantial evidence because: (1) the ALJ gave improper weight to the opinion of her primary care physician, Dr. Robert Post; and (2) the ALJ's finding that her disability began on April 26, 2016, is not supported by substantial evidence and the correct onset date of her disability was August 6, 2014. R. Doc. 13.

The Commissioner contends that because Bergeron became disabled after her insured status expired, she is not entitled to benefits and her eligibility for benefits from January 1, 2012 through April of 2014 is moot. R. Doc. 16. The Commissioner contends that the ALJ properly

evaluated Dr. Post's opinion. *Id.* The Commissioner also contends that the ALJ properly relied on the Medical-Vocational Guidelines to find her disabled. *Id.*

## II.     Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a constructive period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-Step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at Step Five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

### III. Analysis

#### A. Weight Given to Primary Care Physician, Dr. Robert Post's Opinion

Bergeron contends that the ALJ failed to give the proper weight to Dr. Post's opinion, despite acknowledging that he had a unique knowledge of her conditions based on a treatment history that is significant in its depth and duration. R. Doc. 13. Bergeron contends that the ALJ wrongly failed to give controlling weight to her treating physicians opinion because he was not sure if he understood the Social Security Administration's regulations; a factor which was

irrelevant to the weight determination. *Id.* Bergeron contends that the ALJ failed to consider the *Newton v. Apfel* factors and improperly rejected the treating in physician's opinion without providing a detailed analysis under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Id.*; *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

The Commissioner contends that the ALJ was not required to provide a detailed inquiry into each factor in 404.1527(d)(2) where reliable medical evidence controverts the treating physician's finding. R. Doc. 16. The Commissioner further contends that *Newton* does not apply to this case because: (1) the opinion is limited to where the ALJ rejects the treating physician's opinion before it; and (2) Dr. Post was a general physician, not treating specialist, and *Newton* applies to treating specialists. *Id.*

SSA Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's medical opinion" and lists factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.
>
> The regulation is construed in Social Security Ruling ("SSR") 96–2p, which states:
>
> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided*

6

*in 20 C.F.R. 404.1527 and 416.927.* SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added).

In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight. *Id.* SSR 96–5p provides, with respect to "Residual Functional Capacity Assessments and Medical Source Statements," that "Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527… providing appropriate explanations for accepting or rejecting such opinions." SSR 96–5p, 61 F.R. 34471, 34474 (July 2, 1996).

Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e). *See Newton*, 209 F.3d at 453.

The record indicates that the ALJ conducted an exhaustive review of the medical records. R. Doc. 12-2, Tr. 14-16. In so doing, he noted that the medical record showed a history of multiple sclerosis, optic neuritis, headaches, and cervical and lumbar degenerative disc disease since before the alleged onset date. He mentioned the diagnostic tests such as an MRI, which confirmed evidence of nonspecific white matter disease and inflammation of the right optic nerve. In addition, he noted the cervical spine imaging results that described the level of degeneration of her spine.

7

He noted that she underwent a multiple sclerosis work up in September of 2015 following bilateral arm numbness and difficulty with walking. The work up confirmed the existence of MS. *Id.*

The ALJ also noted the opinion of Dr. Post, who assessed her limitations and concluded that he believed Bergeron to be disabled secondary to her MS and other symptoms including arm numbness, fatigue, weak legs, burning feet, and blurry vision. R. Doc. 12-2, Tr. 16. Additionally, the ALJ noted his concern for whether Dr. Post was aware that issues of limitation were reserved to the Commissioner and as a result he found that that the opinion as to disability was not entitled to any special significant weight. *Id.* In so doing, he noted that the limitations opined on by Dr. Post conflicted with his own treatment notes, other medical records, and Bergeron's reported daily activities. *Id.*

The Court, in reviewing the record, finds that the ALJ's decision to give Dr. Posts limitation finding little weight is based upon substantial evidence. Although Bergeron contends that the ALJ should have accepted Dr. Post's limitation findings, she failed to point to particular medical record that support the limitations as opined by Dr. Post. R. Doc. 13, pp. 2-6.

Bergeron contends that her disability began in June of 2005. The record from that period shows that on May 10, 2006, a neurological examination indicated Bergeron had "normal rapid alternating movements of hands, arms and legs." R. Doc. 12-8, Tr. 280.

On May 24, 2006, Dr. Donald Adams noted that Bergeron's neurological exam was unremarkable and she had no neurologic deficit. R. Doc. 12-7, Tr. 257. On April 24, 2011, Dr. David Curole found that neurologically Bergeron was oriented to time, place, and person. R. Doc. 12-9, 453.

The medical records of April 9, 2014 indicate Bergeron had reported new neck or back complaints as a result of a fall, but did not report any numbness or tingling. R. Doc. 12-12, Tr. 713. On physical examination on that date, her musculoskeletal was in normal range and there was full range of motion in her fingers and through her wrist and hand. *Id.* On October 12, 2014, an examination found that neurologically she was "intact" other than her subjective sensations changes to the bilateral upper extremity. R. Doc. 12-11, Tr. 585. Her motor function was intact to the bilateral upper and lower extremities, had full range of motion to all major joints, and no lower extremity swelling or tenderness. *Id.* In March of 2015, Bergeron was seen by Dr. Murphy, who upon examination found that her sensation was intact to light touch and that her motor strength was 5/5. R. Doc. 12-13, Tr. 859.

Bergeron also contends that the ALJ "implicitly erred" because he did not re-contact Dr. Post to obtain further information. R. Doc. 13. Bergeron relies upon *Newton* for the proposition that if an ALJ expresses doubts about a treating physician's opinions, that he should request additional information to eliminate those doubts before rejecting the opinion. *See Newton*, 209 f.2d at 458.

The Commissioner contends that Bergeron is mistaken when she contends that the ALJ was required to re-contact the physician because that requirement was repealed effective March 26, 2012. R. Doc. 16. The Commissioner also argues that Bergeron does not cite to any relevant legal authority that the ALJ was required to re-contact Dr. Post.

The record in this matter contained other medical opinion evidence from other treating physicians, as noted above, and which contradicted the opinion of Dr. Post. Additionally, the regulation requiring the duty to re-contact a treating physician was repealed. *See How We Collect*

9

*and Consider Evidence of Disability*, 77 Fed. Reg. 1065-01, 2011 WL 7404303 (Feb. 23, 2012). Therefore, the ALJ did not error by not re-contacting Post and his opinion is based upon substantial evidence.

### B. Reliance on Medical-Vocational Guidelines

Bergeron next challenges the ALJ's decision finding her disabled on April 26, 2016, when she turned 50 years old. Bergeron contends that there is significant evidence that she suffered from multiple sclerosis for many years and her onset date should have been August 6, 2014, the date Dr. Post began treating her. R. Doc. 13.

In opposition, the Commissioner contends that this argument is a restatement of the first argument that had the ALJ accepted Dr. Posts restrictive residual functional capacity assessment, she would have been deemed disabled two years earlier. The Commissioner contends that substantial evidence supports the ALJ's finding. As a result, the Commissioner contends that the ALJ's opinion should be affirmed. R. Doc. 16.

Initially, the Court notes that Bergeron has the obligation to cite to some evidence of a functional limitation during the May 2006 time period regarding a possible MS diagnosis. While a test showed the presence of white matter, during that same visit, Dr. Adams noted that on physical examination Bergeron was "perfectly healthy" and there was no "focal neurologic deficit". R. Doc. 12-7, Tr. 256-257. It is well settled that the mere presence of a medical condition is not sufficient to constitute a disabling condition. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). As noted in the analysis above, there is substantial evidence supporting the ALJ's decision, which was his responsibility to do. Therefore, the Court finds that the ALJ's opinion is based upon substantial evidence.

## IV.     Recommendation

For the reasons assigned herein, it is **RECOMMENDED** that the ALJ's decision denying Robin Bergeron's Supplemental Security Income and Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 8th day of August, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.